UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

| | | |
|---|---|---|
| In re:<br>    THOMAS L. GORDON,<br>    JANE D. GORDON.,<br>        *Debtors* | :<br>:<br>:<br>: | Case No.: 15-21785 (AMN)<br><br>Chapter 7 |
| BONNIE C. MANGAN,<br>CHAPTER 7 TRUSTEE.,<br>    *Plaintiff*<br>v.<br>JOHN J. DRISCOLL, JR.,<br>FREDERICK W. DRISCOLL,<br>THOMAS L. GORDON, AND<br>JANE D. GORDON.,<br>    *Defendants* | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | AP No.: 16-2066<br><br><br><br>Re: AP-ECF Nos. 1, 61, 62, 63,<br>68, 69, 70, 72, 74, 76, 78, 81, 83,<br>89, 90, 91, 94, 99 |

## MEMORANDUM AND ORDER GRANTING SUMMARY JUDGMENT AS TO COUNT I

*Parties*

| | |
|---|---|
| Bonnie C. Mangan, Chapter 7 Trustee<br>    *Plaintiff* | John L. Cesaroni<br>Zeisler & Zeisler PC<br>10 Middle Street, 15th Floor<br>Bridgeport, CT 06604 |
| John J. Driscoll, Jr.<br>Frederick W. Driscoll<br>    *Defendants* | Tiziana M. Scaccia<br>Fidelity National Law Group<br>101 Merritt 7, 2nd Floor<br>Norwalk, CT 06851 |
| Thomas L. Gordon<br>Jane D. Gordon<br>    *Defendants* | George M. Purtill<br>Purtill & Pfeffer, P.C.
19 Water Street<br>P.O. Box 50<br>South Glastonbury, CT 06073 |

I. Introduction

On October 13, 2015, Thomas J. Gordon and Jane D. Gordon (the "Debtors") filed a chapter 7 petition in this district.[1] ECF No. 1. Bonnie C. Mangan, (the "Trustee"), was appointed as the chapter 7 trustee for the Debtors' estate shortly thereafter. On September 12, 2016, the Trustee commenced this adversary proceeding by filing a two-count complaint. AP-ECF No. 1.

In Count I, the Trustee alleged a mortgage encumbering the Debtors' residence, in favor of John J. Driscoll, Jr. and Frederick W. Driscoll (the "Driscolls"), failed to recite certain elements required under Connecticut law, and could be avoided for the benefit of the estate. In Count II, the Trustee alleged the Debtors' claimed exemptions in their residence, was subordinate to the interest of the estate.[2] The parties agreed to proceed first on Count I, which, if decided in favor of the Trustee, would likely moot Count II.[3] AP-ECF No. 35, 00:05:45 – 00:06:30; AP-ECF No. 42.

The Trustee and the Driscolls cross-moved for summary judgment on Count I. AP-ECF No. 61, 68.[4] The parties agree on the relevant facts, and assert the issue before the court is purely a question of law.

II. Jurisdiction & Venue

The United States District Court for the District of Connecticut (the "District Court"), has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). The

---

[1] Citations to the docket in Case No. 15-21785 are noted by "ECF No." Citations to the docket of Adversary proceeding No. 16-02066, are noted by "AP-ECF No."
[2] The Trustee has raised a similar objection to the Debtors' claimed exemption in the main bankruptcy case. ECF No. 16.
[3] Should the court rule against the Trustee on Count I, presumably the Trustee would then pursue Count II of the complaint.
[4] Although the Trustee's complaint also named the Debtors' as defendants, only the Driscolls have moved for summary judgment on Count I.

2

Bankruptcy Court derives its authority to hear and determine this matter pursuant to 28 U.S.C. § 157(a) and the Order of Reference of the District Court dated September 21, 1984.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (K).  This Court has the statutory authority and jurisdiction over core proceedings pursuant to 28 U.S.C. §§ 157(b)(1) and 1334 to hear and enter a final order in this matter subject to traditional appeal rights.  This memorandum opinion shall serve as the Court's findings of facts and conclusions of law pursuant to Fed.R.Bankr.P. 7052.

### III. Facts

The parties submitted a joint stipulation of material facts, AP-ECF No. 56, summarized as follows:

1. The Debtors are the record owners of 7 Stratford Park #158, Bloomfield, Connecticut (the "Property"), and purchased the property on November 14, 2014.

2. On November 14, 2014, the Debtors signed a Mortgage and Security Agreement (the "Mortgage"), in favor of the Driscolls, in the original principal amount of $81,000.00, on the Property.  The Mortgage and Security Agreement contained a description of the Property.

3. The Driscolls also signed the Mortgage.

4. The Mortgage was duly recorded on November 17, 2014.

5. The Mortgage identifies the Debtors as the Mortgagors, and the Driscolls as the Mortgagees.

6. On November 14, 2014, the Debtors signed a Promissory Note in favor of the Driscolls in the principal amount of $81,000.00.

7. The Driscolls also signed the Promissory Note.

The parties agree, that the copies of the Mortgage, and Promissory Note, attached to the stipulation, were authentic. AP-ECF No. 56. The parties further agree the dispute is not factual, but rather presents a single question of law: is the Mortgage, as written, enforceable under Connecticut law, or is it avoidable by the Trustee under the Bankruptcy Code?

IV.     Applicable Law

The standard for summary judgment is well settled. Federal Rule of Civil Procedure 56, applicable here under Fed.R.Bankr.P. 7056, provides a party is entitled to summary judgment, "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See, e.g., Anderson v. Liberty Lobby*, 477 U.S. 242 (1986). As the parties have stipulated to the material facts, the matter is ripe for determination on summary judgment.

In her complaint, the Trustee asserts the Mortgage does not recite the elements required under Connecticut law to constitute a valid and enforceable mortgage and seeks to avoid the Mortgage for the benefit of the estate. AP-ECF No. 1. Count I of the Trustee's complaint springs from three related provisions of the Bankruptcy Code.[5] Under § 544(a)(3), the Trustee, may "avoid 'any transfer of property of the debtor . . . that is voidable by . . . a bona fide purchaser of real property . . . against whom applicable law permits such transfer to be perfected.'" *In re Perosio*, 364 B.R. 868, 873 (Bankr. N.D.N.Y. 2006)(*quoting* 11 U.S.C. §544(a)(3)), *aff'd* 277 F.Appx. 110. If the

---

[5] Unless otherwise noted, all statutory citations refer to the Bankruptcy Code, Title 11 of the United States Code.

4

Trustee can avoid the Mortgage, she may recover the new found equity in the Property for the benefit of the estate. 11 U.S.C. §§ 550(a), 551.

But, like many questions in bankruptcy cases, the dispositive "applicable law" is not the Bankruptcy Code, but rather state law. *See In re Potter*, 313 F.3d 93 (2d Cir. 2002)(examining state law to determine whether a trustee may avoid a mortgage under § 544(a)(3)). Thus, the Trustee may only avoid the Mortgage under § 544(a)(3) if it is defective under Connecticut law. *In re Schreier*, 111 B.R. 25, 27 (Bankr. D. Conn. 1990); *see also In re Univ. Towers Owners Corp.*, 266 B.R. 36, 39 (Bankr. D. Conn. 2001).

Connecticut's jurisprudence provides both a statutory, and common law, answer to the question at hand. Conn. Gen. Stat. § 49-31b(a), provides,

> A mortgage deed given to secure payment of a promissory note, which furnishes information from which there can be determined [1] the date, [2] principal amount and [3] maximum term of the note, shall be deemed to give sufficient notice of the nature and amount of the obligation to constitute a valid lien securing payment of all sums owed under the terms of such note.

However, these three elements are "sufficient, but not necessary" for a mortgage to be effective; the statute is simply a "safe harbor." *Dart and Bogue Co., Inc. v. Slosberg*, 202 Conn. 566, 572 (1987); *Naugatuck Sav. Bank v. Fiorenzi*, 232 Conn. 294, 306 n. 12 (1995) ("in *Dart & Bogue*, wherein we concluded that § 49–31b(a) does not impose mandatory minimum requirements for mortgage deeds but, rather, creates a "safe harbor" for real property mortgages that comply with its terms.").

Absent compliance with Conn. Gen. Stat. § 49-31b(a), a mortgage may still be enforceable if it satisfies the "common law criteria of validity," *Dart and Bogue*, 202 Conn. at 572, the touchstone of which is whether the mortgage provides "reasonable

5

notice" to hypothetical creditors, including a Trustee. *Schreier*, 111 B.R. at 28 (quoting *Conn. Nat'l Bank v. Esposito*, 210 Conn. 221, 227 (1989)). "The Mortgage need not recite all of the details of the underlying transaction, and errors and omissions do not affect the validity of the mortgage against third parties if they would not mislead a title searcher as to the true nature of the secured obligation." *Schreier*, 111 B.R. at 28. The record need not be exhaustive; the mortgage "need not recapitulate all the particulars of a secured obligation, provided it includes enough information to allow subsequent creditors, 'by common prudence and by the exercise of ordinary diligence, [to] ascertain the extent of the incumbrance.'" *Dart and Bogue*, 202 Conn. at 580 (quoting *First Nat'l Bank v. Nat'l Grain Corp.*, 103 Conn. 657, 663 (1925)). But, the record must "provide reasonable notice of the nature and amount of the secured obligation." *Dart and Bogue*, 202 Conn. at 580.

    V.    Discussion

The Trustee raises a panoply of defects in the Mortgage, but she does not assert any are fatal in isolation. Rather, she argues that "when taken together" the Mortgage "does not give reasonable notice of the obligation it purports to secure." AP-ECF No. 62, at 8; AP-ECF No. 89, at 11.

As a threshold matter, the Trustee and the Driscolls agree that the Mortgage satisfies only two of the criteria of the "safe harbor" provisions of Conn. Gen. Stat. § 49-31b(a); the Mortgage lists the principal amount of the note and the date the Note was executed, but not the maximum term of the Note. AP-ECF No. 70, pg 17; AP-ECF No. 89, pg 5. Although the three elements listed in Conn. Gen. Stat. § 49-31b(a) are "nonexclusive," they are only nonexclusive in the sense that the statute does not

6

preempt common law standards, but the Mortgage must round all three buoys to enter the safe harbor. *Dart & Bogue*, 202 Conn. at 571, 578. Conn. Gen. Stat. § 49-31b(a) is triggered only "'if [the mortgage] furnishes information from which it can be determined' the date, principal amount and maximum term of the underlying obligation." *Dart & Bogue*, 202 Conn. at 574. Because the Mortgage fails to recite all three elements required under Conn. Gen. Stat §49-31b(a), the Mortgage cannot be enforceable by virtue of that statute.

But, the Mortgage may be enforceable against the Trustee under the common law. Both the Trustee's and the Driscolls' briefs discuss at length the Connecticut Supreme Court's definitive opinion on this question, *Dart and Bogue Co., Inc. v. Slosberg.* That case is of special relevance, as the Connecticut Supreme Court's opinion resulted from a certified question from the District Court, the case having been removed from the Bankruptcy Court. *Dart and Bogue*, 202 Conn. at 569. There, the plaintiff, Dart & Bogue Company, a chapter 11 debtor-in-possession acting as a trustee, sought to avoid two mortgages held by the defendant, using an analogous theory the Trustee asserts here. *Dart and Bogue*, 202 Conn. at 569.

According to the Connecticut Supreme Court, the lodestar question is whether a mortgage provides, "on its face, 'reasonable notice' of the obligation it purports to secure." *Dart and Bogue*, 202 Conn. at 578. In turn, "reasonable notice," though not a complete and comprehensive accounting of the transaction, requires a mortgage provide notice of the "nature and amount" of the encumbrance. *Dart and Bogue*, 202 Conn. at 579. The "nature" of the encumbrance includes whether the debt is "absolute or contingent, liquidated or unliquidated, or whether it is given to secure an existing

7

liability or future advances." The "'amount' of the debt is the dollar value of the obligation secured, to the extent it can be ascertained at the time." *Dart and Bogue*, 202 Conn. at 579. While a mortgage must "identify the note or debt secured by the mortgage," and give notice of the amount of the debt, the mortgage need not list *every* detail of the transaction. *Dart and Bogue*, 202 Conn. at 578-79; *Anatara v. Zoning Bd. Of Appeals of Town of Madison*, 307 Conn. 728, 746 (2013) ("[T]his court has concluded that notices filed in land records regarding secured obligations need not be highly detailed."). Rather, a mortgage need only give "record notice" "to allow subsequent creditors," such as a trustee in bankruptcy, "'by common prudence and by exercise of ordinary diligence, [to] ascertain the extent of the incumbrance.'" *Dart and Bogue*, 202 Conn. at 580 (quoting *First Nat'l Bank v. Nat'l Grain Corp.*, 103 Conn. 657, 663 (1925)). Indeed, the only detail the Connecticut Supreme Court stated was a strict requirement was the amount of the debt "to the extent it can be ascertained at the time the mortgage is executed." *Dart and Bogue*, 202 Conn. at 579.

With that said, "reasonable notice" is not as amorphous as it might sound. The *Dart and Bogue* court identified six pitfalls that could render a mortgage void. These include "(1) misidentifying a future obligation as a debt currently due; (2) misidentifying a contingent obligation as an absolute obligation; (3) misidentifying a promise to perform future services as a promissory note for a sum certain; (4) failing to state the amount of the secured debt when the debt could be definitively ascertained; (5) failing to define the nature and maximum amount of future advances purportedly secured; and (6) claiming security in an amount in excess of the actual amount due." *Dart and Bogue*, 202 Conn.

8

at 580-81 (citations omitted).  But, the failure to state the term of the note does not render the mortgage void.  *Dart and Bogue*, 202 Conn. at 581.

In her objection to the Driscolls' motion for summary judgment, echoed in her own memorandum of law in support of her motion for summary judgment, the Trustee asserts the Mortgage is defective, and thus avoidable under § 544(a), "because it does not provide reasonable notice of the obligation secured."  AP-ECF No. 89, pg 5; AP-ECF No. 62, pg 5.  She points to the language of the Mortgage, specifically ¶ 2.1(a), entitled "THE SECURED OBLIGATIONS," which reads, in pertinent part

> (a) Payment of all obligations of Mortgagor to Mortgagee arising under that certain Promissory Note dated as of November 14, 2014, given by the Mortgagor to the Mortgagee in the original principal amount of Eighty One Thousand and 00/100 Dollars ($81,000.00) (the "Note"), executed and delivered in connection with the Loan (as defined below) and all extensions, renewals, amendments, restatements and/or substitutions of the Mortgage Note and any and all increases in the Secured Obligations evidenced by the Mortgage Note.

The Trustee raises three points, all of which focus on ¶2.1(a) of the Mortgage, asserting first that the Mortgage "fails to define the nature and maximum amount of certain future advances it purportedly secures;" second, that it "does not set forth the interest rate of the Note, whether it is payable at a certain time or upon demand, its term and the amount of any payments;" and third, that "it refers to an undefined and nonexistent 'Loan.'"  AP-ECF No. 89, pg 5.

As to the first claim of error, the Trustee relies heavily on *Bridgeport Land & Title Co. v. George Orlove Co.*, 91 Conn 496, 100 A. 30 (1917).  There, the Connecticut Supreme Court found a mortgage securing "certain flour" was "too indefinite to be effectual as against subsequent encumbrances."  *Bridgeport Land & Title*, 100 A. at 31. The Trustee asserts the 'renewal language' of ¶ 2.1(a) "obscures the nature and

9

amount of the obligation it purports to secure." AP-ECF No 62, pg 6. Because the Mortgage could secure future notes and advances which are neither disclosed, so she claims, nor are identified in either the Note or the Mortgage, the Mortgage does not identify "the maximum amount of the obligation," and is therefore defective. AP-ECF No. 89, pg 7-8. Because the Trustee reads the "renewal" language to permit the "amount of the Mortgage debt [to] be increased or decreased, the terms of the Note [to] be changed, or the Note could simply be replaced with a new, different note" she asserts the Mortgage does not provide the requisite notice of the obligations the Mortgage purports to secure. AP-ECF No. 89, pg 7.

The Driscolls in turn, assert that the 'renewal' language relates only to the Note itself, and does not permit the substitution of new or subsequent promissory notes. AP-ECF No. 99, pg 7.

To be clear, the Trustee does not dispute, nor could she, that the Mortgage states it secures a debt for $81,000.00. Rather, she asserts the renewal language introduces uncertainty into the mix; because the Mortgage, in her reading, could secure an unknown amount of future advances, it thus fails to provide sufficient notice to hypothetical creditors.

Although the Trustee relies heavily on *Bridgeport Land & Title*, that case is easily distinguishable, as the Mortgage here provides a clear marker for the amount of the debt secured by the Mortgage, $81,000.00. Furthermore, the Mortgage references the Note, which describes more fully the repayment terms, a fact not present in *Bridgeport Land & Title. See Conn. Nat'l Bank v. Esposito*, 210 Conn. 221, 229 n.6 (1989) ("In *Bridgeport Land & Title*, a condition in the mortgage provided that, if the grantor could

save the grantee harmless within eighteen months of the date of the mortgage from losses caused by the grantor's failure to deliver 'certain flour' to the grantee, then the mortgage was to be void. We held the use of the term 'certain flour' was too vague and indefinite to inform third parties of the obligation's nature, and thus the mortgage was invalid."). *Bridgeport Land & Title* is inapplicable, because here, not only does the Mortgage list the principal amount of the Note, it also references the note, directing a creditor to a place where additional information, such as the repayment terms and interest rate may be found. *Esposito*, 210 Conn. at 229 n.6 ("The mortgage deed [in *Bridgeport Land & Title*] omitted certain details about the transaction, and did not identify other sources where this information could be found.").

But *Esposito* also calls into question even the Trustee's reliance on the "renewal language." In *Esposito* the Connecticut Supreme Court held a mortgage that did not contain the amount of the obligation to be valid, and despite such omissions, it contained "sufficient data to put a title searcher, exercising common prudence and ordinary diligence, on a track to discovery of the amount due." *Esposito*, 210 Conn. at 231.

The language of the mortgage in *Esposito* was more vague than the Mortgage at issue here.

> The purported mortgage deed that was recorded in the Plainfield land records states that the mortgagor, Esposito, 'in consideration of advances made for the benefit of Smithfield Glass, Inc. and to induce the Mortgagee [Tri–Con] to enter into a Lease with said Smithfield Glass, Inc., grants and conveys to Mortgagee' a certain piece of property in Plainfield. Purportedly, the mortgage was given '[t]o secure to Mortgagee on condition of the repayment of all monies due mortgagee' under the lease that was referred to in the Mortgage but was not recorded. The mortgage also states: 'Upon payment and discharge of all sums secured by this

11

> Mortgage, this Mortgage shall become null and void and Lender shall release this Mortgage without charge to Mortgagor.'

*Esposito*, 210 Conn. at 225. The instant Mortgage is unquestionably more specific, by providing the amount secured. But like *Esposito*, it provides a hypothetical creditor with the information needed to uncover the true nature of the transaction, the hallmark of "reasonable notice."

The Connecticut Supreme Court has since reiterated that a mortgage deed is not invalid "simply because the deed itself lacks a statement of the specific amount of the debt secured." *Devlin v. Wiener*, 232 Conn. 550, 556 (1995). Indeed, because "the land records are the starting point for inquiry and not the ending point," assuming the "renewal language" operates as the Trustee suggests, that language would simply alert a hypothetical creditor "exercising common prudence and ordinary diligence, on a track to discovery of the amount due." *Esposito*, 210 Conn. at 231-32. Because the Mortgage states on its face that it secures the Note, in the amount of $81,000.00, that constitutes reasonable notice that the property is subject to an obligation of at least that amount.[6] A hypothetical creditor could, upon examining the Mortgage, inquire further of

---

[6] What the Trustee implies, is that because the Mortgage alludes to 'future advances,' it is defective in its entirety. In *Sadd v. Heim*, 143 Conn. 582 (1956), the Connecticut Supreme Court found a mortgage partially invalid because it obscured the nature of the transaction; while a mortgage purported to secure a debt of $5,000.00, at the time it was executed, only a portion of the $5,000.00 had been lent, with the balance to be lent as a building was constructed in stages. *Sadd*, 143 Conn. at 586. The Court concluded that mortgage was misleading as to the nature of the obligation. *Sadd*, 143 Conn. at 586-87; *Esposito*, 210 Conn. 221, 229 (1989) ("In *Sadd v. Heim*, this court held a mortgage invalid because there was an affirmative misidentification of the mortgage as security for a debt currently due when, in fact, half of the mortgage actually was to secure future advances."). But the judgment in *Sadd* also stands for the proposition that the Mortgage is enforceable up to the amount of consideration transferred. Without deciding whether such consideration was paid, the Mortgage provided reasonable notice that the obligation secured was $81,000.00. Because the court is not asked to determine the secured status of a subsequent note via the "renewal language," the court need not determine the efficacy of this language. But it is clear that the Mortgage as a whole provides reasonable notice that the Mortgage secures the Driscolls' claim of at least $81,000.00. *Sadd*, 143 Conn. at 587-88 ("Because of the absence of fraud, the

12

the parties as to whether any such "renewals," "substitutions" or "extensions," have occurred. Of course, whether the Mortgage could secure any such renewals is not before the court. What is evident, is that the Mortgage provides "reasonable notice" that it secures a Note for $81,000.00.

The Trustee also asserts the Mortgage is invalid because it "does not set forth the interest rate of the Note, whether it is payable at a certain time or upon demand, its term and the amount of any payments." AP-ECF No. 89, pg 5. At the risk of repetition, the Mortgage need not contain every exhaustive detail, it need only point a hypothetical creditor in the right direction. *Esposito*, 210 Conn. at 231-32.

The Trustee asserts the Mortgage is defective, by again pointing to ¶2.1(a), because that section references the Note, "executed and delivered in connection with the Loan (as defined below)." AP-ECF No. 56, Ex. C. The Trustee correctly points out, the word "Loan" is not defined in the Mortgage, nor is it defined in the Note. Although the Trustee acknowledges a potential purchaser could acquire a copy of the Note, she argues the Mortgage on the whole is defective because it refers to a non-existent "Loan." AP-ECF No. 62, pg 7. The Driscolls, in turn, point to the common usage and understanding of the term "Loan" and equate the use of the term "Loan," which is undefined, with the term "Note" which refers to the Promissory Note signed by the Driscolls. AP-ECF No. 70, pg 26. But, the issue here is not what effect to give the word "Loan," as the court has not been asked to interpret the Mortgage as a contract. *Cf. Webster Bank v. Oakley*, 265 Conn. 539, 547 (2000), cert. denied, 541 U.S. 903 (2004) ("Construction of a mortgage deed is governed by the same rules of interpretation that

---

mortgage serves as security for $1250, representing the cash actually turned over to the mortgagor when the instrument was executed.").

13

apply to written instruments or contracts generally, and to deeds particularly."). The court is only tasked with answering whether the Mortgages gives "reasonable notice." *Dart and Bogue*, 202 Conn. at 578. Here, as the Trustee suggests, if a hypothetical creditor was confronted with the use of the word "Loan" in the Mortgage, she could inquire of the parties. AP-ECF No. 62, pg 7. The parties would inform the inquiring mind that no documents existed with the title "Loan." Thus, by exercise of "ordinary diligence," a hypothetical creditor would in fact, learn the truth. Which is precisely the point of the Mortgage in the first place. *Dart and Bogue*, 202 Conn. at 580.

Because the Mortgage provides "reasonable notice," to a hypothetical creditor, the Mortgage is enforceable under Connecticut common law.

## Conclusion

Accordingly, the Chapter 7 Trustee's Motion for Summary Judgment, ECF No. 61, is DENIED, the defendants' Motion for Summary Judgment, ECF No. 68, is GRANTED, and, judgment shall enter for the defendants John J. Driscoll, Jr. and Frederick W. Driscoll as to Count I of the complaint.

Dated on February 26, 2018, at New Haven, Connecticut.

*Ann M. Nevins*
United States Bankruptcy Judge
District of Connecticut